IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHAD T.,[1] | : | Case No. 3:21-cv-00052 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

### DECISION AND ORDER

## I. INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income in June 2018. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 15), Plaintiff's Reply (Doc. 16), and the administrative record (Doc. 9).

## II.   BACKGROUND

Plaintiff asserts that he has been under a disability since November 1, 2016. At that time, he was thirty-three years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "limited education." *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9-2, PageID 51-70), Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 15), and Plaintiff's Reply (Doc. 16). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.   STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. FACTS

### A. The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since November 1, 2016, the alleged onset date.

Step 2: He has the severe impairments of degenerative disc disease of the thoracic spine, hepatitis C, obesity, depression, and an anxiety disorder.

| | |
|---|---|
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR § 404.1567(b), subject to the following limitations: "(1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery[;] (3) limited to performing simple, repetitive tasks with an SVP of one or two; (4) occasional superficial contact with co-workers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts; (5) no public contact; (6) no teamwork or tandem tasks; (7) no close over the shoulder supervision; (8) no fast-paced production work or jobs that involve strict production quotas; and (9) limited to jobs that involve very little, if any, change in the job duties or the work routine from one day to the next." |
| | He is unable to perform any of his past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. |

(Doc. 9-2, PageID 53-69.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 70.)

**B.     Consultative Psychologist Larry James, Ph.D.**

Dr. James performed a consultative psychological evaluation in October 2018. (Doc. 9-7, PageID 645-52.) Dr. James opined that Plaintiff "may have difficulty understanding, remembering, and completing instructions in a work setting." (Doc. 9-7, PageID 652.) Dr. James also opined that Plaintiff "may have difficulty consistently and

5

appropriately interacting with coworkers and supervisors in a work setting." (*Id.*) As for Plaintiff's ability to maintain attention, concentration, persistence, and pace, Dr. James opined that Plaintiff "did not report attention and concentration difficulties that could impact his occupational pace and performance." (*Id.*) In the area of stress tolerance, Dr. James opined: "[Plaintiff] may have difficulty managing interpersonal disputes in the workplace. [Plaintiff] may respond in an inappropriate manner when stressed in the work setting." (*Id.*)

The ALJ concluded that Dr. James' opinion was not persuasive. (Doc. 9-2, PageID 66.) The ALJ explained:

> Dr. James' opinion is not supported by his own examination, and it is not consistent with the record (Exhibits 1F-20F). For example, Dr. James noted that [Plaintiff] had an average working memory, and his records generally indicate average intelligence and normal cognition, including with respect to memory (e.g. Exhibits 2F/7, 6F/7, 12F/6 and 13, 13F/5, and 15F/9). Those findings are not consistent with Dr. James' opinion regarding [Plaintiff's] potential difficulty understanding, remembering, and completing instructions in a work setting. The social limitations and difficulty with stress tolerance appear to be based on [Plaintiff's] reported difficulty controlling his temper, which the record suggests is generally within his control. For example, [Plaintiff's] behavior was often normal and cooperative (e.g. Exhibits 2F/7, 4F/5, 6F/16, 12F/6, and 13F/5). His adequate judgment throughout the record also suggests better control of his behavior than suggested by Dr. James' opinion (e.g. Exhibits 6F/7, 12F/6, 13F/5, and 15F/9). Thus, the record reflects better functioning than suggested by Dr. James' opinion. Accordingly, Dr. James' opinion is not persuasive.

(*Id.* at PageID 66-67.)

### C. Treating psychiatrist Kenneth Glass, M.D.

Dr. Glass completed a checkbox mental impairment questionnaire in September 2019. (Doc. 9-8, PageID 947-49.) Dr. Glass opined that Plaintiff experienced moderate to

marked impairment in all areas of work-related mental functioning identified on the form. (*Id.* at PageID 948-49.) Dr. Glass also opined that Plaintiff was markedly impaired in his "overall ability[ies]" in the following areas: to learn, recall, or use information; to relate to and work with supervisors, coworkers, and the public; to focus attention on work activities and stay on task at a sustained rate; and to regulate emotions, control behavior, and maintain well-being. (*Id.* at PageID 949.) According to Dr. Glass, Plaintiff would be off task for twenty percent or more of the workday and absent from work more than three times per month. (*Id.* at PageID 947.) Dr. Glass also opined that Plaintiff would be unable to perform regular, full-time, competitive work on a sustained basis without missing work more than twice per month, being off task more than fifteen percent of the workday, or needing additional breaks. (*Id.* at PageID 949.)

The ALJ concluded that Dr. Glass' opinion was not persuasive. (Doc. 9-2, PageID 67.) To support this conclusion, the ALJ explained:

> Dr. Glass' opinion appears to be based on an uncritical acceptance of [Plaintiff's] subjective complaints (Exhibit 18F). He did not explain his opinion well, and it was not supported by his treatment notes (Exhibits 15F, 18F, and 20F). For example, at Dr. Glass' initial evaluation, [Plaintiff's] mental status examination was relatively normal except for his anxiety with a jittery presentation (Exhibit 15F/9). He had no delusions, hallucinations, or suicidal or homicidal ideations with normal and goal directed thought processes (Exhibit 15F/9). He made good eye contact and had intact concentration, intact memory and abstractions, average fund of knowledge, and fair and intact insight and judgment (Exhibit 15F/9). [Plaintiff] had a similar, relatively normal presentation throughout most of the remainder of Dr. Glass's treatment notes, which do not support his opinion (Exhibits 15F and 20F). The relatively good mental functioning was also reflected at his psychological consultative examination and in records from his prior mental health care providers, and those findings are not consistent with the excessive limitations in Dr. Glass' opinion (e.g. Exhibits 4F, 6F, 8F, 12F, and 13F). Therefore, the undersigned does not find Dr. Glass' opinion

persuasive.

(*Id.*)

### D. State Agency Psychological Consultants

State agency psychological consultant Karen Terry, Ph.D., completed a mental residual functional capacity assessment in October 2018. (Doc. 9-3, PageID 122-24.) Dr. Terry opined that Plaintiff could follow simple, routine, one- to three-step tasks and retained the ability to relate to others "on a superficial level." (*Id.* at PageID 123-24.) Dr. Terry also opined: "[Plaintiff] retains the ability to perform job duties that remain relatively static; any necessary changes need to occur infrequently and be adequately and easily explained to him ahead of time." (*Id.* at PageID 124.) Karla Delcour, Ph.D. reviewed the updated record at the reconsideration level in February 2019. (*Id.* at PageID 156-58.) Dr. Delcour affirmed Dr. Terry's assessment. (*Id.*)

The ALJ concluded that the consultants' findings were "not fully persuasive." (Doc. 9-2, PageID 66.) The ALJ explained:

> The opinions of Drs. Terry and Delcour include some terminology that is vocationally irrelevant or undefined, such as "superficial" contact. Despite having some vocationally irrelevant and undefined terms, the spirit of their opinions have been mostly adopted in the residual functional capacity, as it is generally supported by and consistent with the record (Exhibits 1F-20F). [Plaintiff] made significant complaints of symptomology, but the record generally demonstrates adequate mental functioning, including with respect to cognition, memory, attention, concentration, cooperative behavior, and judgment (e.g. Exhibits 2F/7, 6F/7, 12F/6 and 13, 13F/5, and 15F/9). Thus, when giving [Plaintiff] the full benefit of the doubt, most of the restrictions in the opinions of Drs. Terry and Delcour are supported by and consistent with the record when their opinions were placed into vocationally defined terms. However, the undersigned did not include a limitation that changes be explained ahead of time, as that appears to be more a matter of preference than actual psychological necessity. For example, [Plaintiff]

8

> usually presents with adequate cognition and judgment to suggest that he was able to adapt to changes without the additional notice (e.g. Exhibits 2F/7, 6F/7, 12F/6 and 13, 13F/5, and 15F/9). As such, the opinions of Drs. Terry and Delcour are not fully persuasive.

(*Id.*)

## V. LAW AND ANALYSIS

Plaintiff asserts that the ALJ failed to properly evaluate medical source opinions and Plaintiff's symptom severity. (Doc. 11, PageID 969.) Plaintiff specifically challenges the ALJ's analysis of the opinions of treating psychiatrist Kenneth Glass, M.D., consultative psychologist Larry James, Ph.D., and State agency psychological consultants Karen Terry, Ph.D. and Karla Delcour, Ph.D. (*Id.* at PageID 969-73.) Because Plaintiff's arguments are not well-taken, the Court affirms the ALJ's decision.

### A. Applicable Law

#### *1. Evaluation of medical opinion evidence*

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

9

Because Plaintiff filed his claims in June 2018, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[3] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

10

### 2. *Evaluation of symptom severity*

When a claimant alleges symptoms of disabling severity, the Social Security Administration uses a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).

First, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided

11

by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The ALJ must determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example,

12

the ALJ will consider an individual's statements, keeping in mind that those statements may be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. However, the ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

The SSR lists several examples of why individuals may not seek or follow treatment, including side effects from medications, an inability to afford treatment, and an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "***will***" explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

### B. Consultative Psychologist Larry James, Ph.D.

The ALJ complied with applicable regulations to find that Dr. James' opinion is not persuasive, and his analysis is supported by substantial evidence. The ALJ addressed the supportability and consistency of Dr. James' opinion as required by 20 C.F.R.

13

§ 404.1520c(b)(2), (c)(1), and (c)(2). The ALJ concluded that Dr. James' opinion was unsupported by Dr. James' own examination. (Doc. 9-2, PageID 66-67; *see* 20 C.F.R. § 404.1520c(c)(1).) Specifically, the ALJ found that the opinion is not supported by Dr. James' observations that Plaintiff presented with an average working memory, average intelligence, normal cognition, normal and cooperative behavior, and adequate judgment. (Doc. 9-2, PageID 66-67.) The ALJ also found that Dr. James' opinion is inconsistent with other evidence in the record. (*Id.* at PageID 67; see 20 C.F.R. § 404.1520(c)(2).) In support of this conclusion, the ALJ cited to examination findings in the mental health treatment records of average working memory, average intelligence, normal cognition, normal and cooperative behavior, and adequate judgment. (Doc. 9-2, PageID 66-67.)

The ALJ's conclusions are supported by his discussion of the medical evidence. For example, the ALJ provided a detailed summary of Plaintiff's mental health treatment and progress notes. (Doc. 9-2, PageID 61-65.) The ALJ noted that Plaintiff complained on several occasions of symptoms of anxiety, depression, anger issues, and irritability. (*Id.*) The ALJ acknowledged that some mental status examinations showed anxious, depressed, and/or dysphoric moods, irritability, a constricted or depressed affect, and some limited insight. (*Id.*, citing Doc. 9-7, PageID 712, 713, 720; Doc. 9-8, PageID 863, 865, 868, 869, 871, 961, 962.) However, the ALJ also noted normal mental status findings throughout the record including euthymic moods, no overt signs of anxiety, normal eye contact, normal speech, logical thought processes, normal motor activity, average intellectual functioning, intact cognition, and fair and intact insight and judgment. (Doc. 9-2, PageID 61-65, citing Doc. 9-7, PageID 609, 610, 721-23, 816, 818,

14

820, 822; Doc. 9-8, PageID 864, 866, 867.) The ALJ balanced this evidence and concluded that Dr. James' opinion was not persuasive. The ALJ's conclusions are supported by substantial evidence and so cannot be reversed by this Court.

      C.      **Treating psychiatrist Kenneth Glass, M.D.**

Likewise, the ALJ complied with applicable regulations when he found that Dr. Glass' opinion is not persuasive, and his analysis is supported by substantial evidence.

With regard to the supportability factor (20 C.F.R. § 404.1520c(c)(1)), the ALJ concluded that Dr. Glass' opinion was unsupported by an explanation or treatment notes. (Doc. 9-2, PageID 67.) While Dr. Glass indicated that Plaintiff experienced several signs and symptoms (poor memory, sleep disturbance, mood disturbance, decreased energy, generalized persistent anxiety, feelings of guilt and worthlessness, and difficulty with thinking or concentrating), he did not explain why these signs and symptoms resulted in some moderate—and mostly marked—impairment in work-related mental functioning. (Doc. 9-8, PageID 947-49.) Dr. Glass' treatment notes also did not support his opinions. While those notes did document anxiety with a jittery presentation on some occasions, Dr. Glass' mental status examination findings were otherwise relatively normal. (Doc. 9-2, PageID 65, 67.) These findings included normal and goal-directed thought processes, good eye contact, intact concentration, intact memory and abstractions, an average fund of knowledge, no perceptual abnormalities, and fair and intact insight and judgment. (*Id.*, citing Doc. 9-8, PageID 863-69, 871, 961-62.) The ALJ's findings regarding the supportability factor are supported by substantial evidence.

15

The ALJ also found that Dr. Glass' opinion is not consistent with other evidence in the record. (Do. 9-2, PageID 67; see 20 C.F.R. § 404.1520(c)(2).) In support of this conclusion, the ALJ cited to the report and findings from consultative psychologist Dr. James and to records from Plaintiff's prior mental health providers. (Doc. 9-2, PageID 67.) These records documented Plaintiff's subjective complaints which included anxiety, depression, anger issues, and irritability. (Doc. 9-2, PageID 61-65.) These records also documented some mental status abnormalities: anxious, depressed, and/or dysphoric moods; irritability; a constricted or depressed affect; and some limited insight. (Doc. 9-2, PageID 61-65, citing, for example, Doc. 9-7, PageID 712, 713, 720.) But the records also documented many normal mental status findings, such as stable and/or normal moods, a normal affect, average working memory, average intelligence, normal cognition, normal and cooperative behavior, and adequate judgment. (Doc. 9-2, PageID 61-65, citing Doc. 9-7, PageID 609-10, 649-51, 721-23, 816, 818, 820, 822.) The ALJ balanced all of this evidence and concluded that Dr. Jerele's opinion was persuasive. The ALJ's conclusions are supported by substantial evidence and so cannot be reversed by this Court.

### D. State Agency Psychological Consultants

Plaintiff contends that the ALJ did not adequately discuss the consistency or supportability factors when he found that the consultants' findings were "not fully persuasive." (Doc. 11, PageID 972.) Regarding the consistency factor, Plaintiff argues that "the ALJ generally references the opinion as being inconsistent with 'the record' without the detailed explanation regarding the factors that the Regulations promise." (Doc. 11, PageID 972.) These arguments are not well-taken.

16

As an initial matter, the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail. 20 C.F.R. §§ 404.1520c and 416.920c. To the contrary, the Social Security Administration has explained with regard to the consistency factor that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017) (to be codified at 20 C.F.R. §§ 404.1520c and 416.920c).

Moreover, the ALJ adequately explained his consideration of the supportability and consistency factors. The ALJ reasoned that the consultants' findings were generally consistent with the record, and cited to several treatment notes that documented normal cognition, memory, attention, concentration, behavior, and judgment. (Doc. 9-2, PageID 66.) The ALJ found that the consultants' opinion that changes need to be "explained ahead of time" was inconsistent with examinations that showed adequate cognition and judgment sufficient to adapt to changes without additional notice. (*Id.*) Regarding supportability, the ALJ found that some of the terminology that Drs. Terry and Delcour used were "vocationally irrelevant and undefined." (*Id.*) The ALJ complied with the applicable regulations when evaluating the persuasiveness of these opinions.

Plaintiff argues that the ALJ erred by concluding that the term "superficial" is "vocationally irrelevant or undefined," and by rejecting the consultants' conclusion that Plaintiff was limited to superficial social contact. (Doc. 11, PageID 972.) Plaintiff points out that courts have "routinely recognized the distinction between limiting the quantity of

17

time spent with an individual with the limitation relating to the quality of the interactions—including a limitation to 'superficial" interaction.'" (*Id.*) (citation omitted.)

Plaintiff correctly describes the case law on this issue. However, the ALJ did account for this portion of the consultants' assessment in the RFC. Specifically, the ALJ precluded Plaintiff from all public contact and limited Plaintiff to superficial contact with coworkers and supervisors. (Doc. 9-2, PageID 56.) The ALJ defined "superficial contact" as "retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts." (*Id.*) Because the ALJ included the consultants' limitation to superficial contact in the RFC, any error the ALJ committed by describing "superficial" as vocationally irrelevant or undefined is harmless.

### E.     Symptom Severity

Plaintiff argues that the ALJ reversibly erred in evaluating Plaintiff's symptom severity. (Doc. 11, PageID 969.) Specifically, Plaintiff contends that the ALJ should not have relied on "chores Plaintiff performed such as going to Goodwill and attempting GED classes" as a basis for rejecting the medical opinions in the record. (*Id.*) Although Plaintiff concedes that the ALJ is permitted to consider his daily activities, he argues that the ALJ erroneously failed to recognize the differences between these daily activities and his work activities. (*Id.* at PageID 973.)

Plaintiff's argument mischaracterizes the ALJ's decision. The ALJ did not reject the medical opinions because of Plaintiff's activities. Nor did the ALJ find that Plaintiff

18

was not disabled because of these activities. Instead, the ALJ referenced these activities when he summarized Plaintiff's medical records and mental health treatment history:

> In December 2017, the claimant established care with a primary care provider and noted a history of anxiety with previous Xanax and Klonopin use (Exhibit 2F/9). . . . ***January 2018 records indicate he was taking GED classes, and he was going to Goodwill for assistance searching and applying to jobs*** (Exhibit 13F/29). The claimant was discharged from Eastway February 2018 after a last contact in December 2017 (Exhibit 12F/19). The discharge summary reflects that the claimant's goals were met and no services were needed (Exhibit 12F/19). Discharge notes also indicate that the claimant was not in compliance with Eastway services (Exhibit 12F/19). That month, the claimant was also discharged from South Community Behavior Health after he did not return (Exhibit 13F/1). Therefore, the record does not support symptoms or limitations as severe as alleged.

(Doc. 9-2, PageID 63) (emphasis added.)

The ALJ's analysis of Plaintiff's symptom severity complied with SSR 16-3p, 2017 WL 5180304 (revised and republished October 25, 2017). The ALJ determined that Plaintiff has medically determinable impairments (degenerative disc disease of the thoracic spine, hepatitis C, obesity, depression, and an anxiety disorder) that could reasonably cause the type of symptomatology alleged. (Doc. 9-2, PageID 54, 58.) Next, the ALJ considered the evidence in the record and concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 58.) The ALJ provided a detailed summary of Plaintiff's medical records and treatment history. (*Id.* at PageID 58-65.) The ALJ acknowledged many of Plaintiff's subjective complaints and many of the abnormal examination findings in these records. (*Id.*) The ALJ weighed these abnormal findings against other normal findings in the record. (*Id.*)

19

The ALJ balanced Plaintiff's reported difficulties with Plaintiff's statements throughout the record of what he was able to do, and concluded that the evidence did not support Plaintiff's allegations of symptom severity. (*Id.* at PageID 56-65.) Accordingly, the ALJ's evaluation of Plaintiff's symptom severity is supported by substantial evidence, and his consideration of Plaintiff's reported activities complied with SSR 16-3p.

## VI. CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports his conclusions. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 11) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

    */s/ Caroline H. Gentry*
    Caroline H. Gentry
    United States Magistrate Judge